OPINION. Black, Judge: The petitioner states the issue which is involved in the instant case in the following language in its brief: This case is concerned with the disallowance by the respondent of $12,880.00 of management expenses claimed as a deduction by the petitioner for the fiscal year November 1, 1942-October 31, 1943. Of this sum, petitioner concedes that $897.50 was properly disallowed but respectfully submits that $11,982.50 should have been allowed as a deduction, and that in respect of this amount, no deficiency in income or excess profits tax is payable by the petitioner. Respondent in his brief states the issue as follows: Did the Commissioner properly disallow deductions of $14,400.00 and $280.00 claimed by petitioner in its 1943 return as management and bookkeeping fees, respectively? Both parties agree that the applicable statute is section 23 (a) (1) (A) of the Internal Revenue Code and that the applicable regulations are Regulations 111, section 29.23 (a)-l.[1] Petitioner’s officers, as such, drew no salaries. During the first year of operation its president and treasurer, M. S. Fine, drew $50 a week. It is clear from the evidence that this $50 a week was not in payment for his services as the chief executive officer of petitioner, but was in payment for his specific services in buying and booking films for showing in petitioner’s theatre. On' July 12, 1943, a management agreement was entered into by and between petitioner and a partnership, styled “Colony Management Company,” which was composed of Fine, Berman, and Stecker. Under the terms of this agreement the partnership was to receive $400 a week as a fee for the management of petitioner’s theatre. The things which Management was to do for petitioner under the terms of this agreement are set-out in our findings of fact and need not be repeated here. The Commissioner has recognized the validity of this management agreement, except its retroactive part, in his determination of the deficiencies. He has allowed petitioner, as a deduction for ordinary and necessary business expenses, the $400 a week which petitioner paid Management from the date of the entering into the contract, July 12, 1943, to the end of petitioner’s fiscal year, October 31, 1943. He has, however, disallowed the retroactive payments which were made under the terms of the contract. Therefore, it is these retroactive payments which are in controversy. As shown in our findings of fact the management agreement contained the following retroactive provisions: This Agreement shall be effective as of the first day of November, 1942, and shaE continue in force until terminated by written notice of termination delivered by one of the parties to the other not less than tixty (60) days before the date of termination fixed in such notice. Under the terms of this retroactive clause of the contract petitioner paid to Management $14,400 covering 36 weeks at $400 a week to November 1, 1942. Petitioner does not claim deduction for the full amount of this $14,400. Fine, who during this period had been paid $50 a week for his services in buying and booking films, repaid to petitioner $1,700. Therefore, petitioner does not claim this latter amount as a deduction, nor does petitioner claim as a deduction bookkeeping fees which it incurred during the fiscal year aggregating $897.50. The net amount which petitioner does claim under the retroactive provisions of the management contract is stated in the first paragraph of this opinion. As its principal authority for its contention that the retroactive payments are deductible, petitioner relies upon Lucas v. Ox Fibre Brush Co., 281 U. S. 115. In that case the president and the treasurer of the taxpayer corporation were each voted $24,000 “as extra compensation for their past services to this company as an officer thereof and in any other capacity.” While this extra compensation was paid during the taxable year 1920, the same year in which the extra compensation was voted, the services rendered were all rendered prior to the year 1920. It was the contention of the Commissioner in that case that the deduction of the extra compensation claimed by the corporation should be disallowed. The Supreme Court, in that case, held for the taxpayer on the ground that the payments were made “as a reasonable allowance for compensation for personal services actually rendered. The statute does not require that the services should be actually rendered during the taxable year, but that the payments therefor shall be proper expenses paid or incurred during the taxable year.” The Court goes on to say that the expenses in that case which were reasonable could not be attributed to any other year than the year 1920, because th,e corporation had no obligation to pay the money in any other year. The Court sums it up in this manner: ■ * * * n was deductible in the year 1920, or not at all. Being deductible as a reasonable payment, there was no authority-vested in the Commissioner to disregard the actual transaction and to readjust the income on another basis which did • not respond to the facts. - • In the instant case the payment for personal services was made during the taxable year and was for personal services previously rendered, but rendered for the most part during the taxable year. In Ox Fibre Brush, supra, payment was made for personal services rendered in prior years. We think the Ox Fibre Brush case supports petitioner. The Commissioner strongly argues that Ox Fibre Brush is distinguishable because in the instant case the Colony Management Co., with which petitioner made the contract, was not in existence' prior to July 12,1943, when the written articles of partnership were entered into and, therefore, there could be no valid retroactive agreement entered into with a partnership which did not have any valid existence prior to July 12, 1943. - Petitioner, on the other hand, contends that late in October, 1942, prior to the beginning of the fiscal year 1943, Fine, Stecker, and Ber-man agreed- that they would form án oral management partnership effective November 1, 1942, that the partnership would manage the theatre during the fiscal year 1943, and that whatever management fee might be agreed upon during the fiscal year would be retroactive to November 1, 1942, the beginning of the fiscal year. Petitioner contends, however, that, even if we should fail to find that there was an - oral partnership of the Colony Management Co. prior to July 12,1943, nevertheless, petitioner is entitled to a deduction of the retroactive payments made to Colony Management Co. because they were made for services actually performed for petitioner by Fine, Stecker, and Ber-man during the taxable year. These three men were the partners in Colony Management Co. We think this latter contention of petitioner must be sustained. We have not felt justified in making a definite finding that an oral partnership existed under the name of Colony Management Co. from November 1, 1942, to the date of the signing of the written articles of partnership on July 12,1943. Undoubtedly there was discussion by Fine, Stecker, and Berman concerning the formation of such, a partnership and agreement that they would be compensated for their services as officers and directors of the corporation in the way of management fees and that, when and if such management fees were agreed upon during the fiscal year 1943, the agreement would be made retroactive to the beginning of the year 1942. This much seems clear to us from the evidence. Respondent in his brief lays much stress on the fact that Fine was the one who was rendering most valuable assistance and services to petitioner in a management capacity. The evidence undoubtedly establishes that to be true, but it should be noted that the management partnership agreement provided that Fine should receive 50 per cent of the net profits of the partnership, Stecber should receive 37 per cent, and Berman should receive 13 per cent. The management fees received by these parties during the fiscal year here in question were divided in those proportions. The services rendered by the management partnership after July 12,1943, were the same as the three officers and directors who composed the partnership had been rendering to the corporation from the beginning of the fiscal year to the date of the signing of the agreement. As we have already stated, these officers and directors of the corporation who were in charge of its business operations received no salaries as such, and it seems to us that, under the doctrine of Ox Fibre Brush, Co., supra, the retroactive payments of management fees to the beginning of the fiscal year are deductible, and that this is true even though it be assumed there was no oral partnership existing prior to the signing of the written partnership agreement. As bearing upon the reasonableness of these management fees, it is in evidence that the return of petitioner shows that after taking the deductions which were claimed on the return, including the ones here in controversy, petitioner showed a net income of $7,169.50 for the second year of its operation. The profits of petitioner have materially increased since then, and for the last fiscal year the profits were about $72,000. The management fee of $400 a week has remained the same. As we have already stated, we do not understand that the Commissioner is contending that the management fee of $400 a week is excessive compensation to Colony Management Co. for its services in managing petitioner’s theatre. He does contend, however, that the retroactive payments to November 1,1942, do not represent “ordinary and necessary business expenses” as those terms are used in the applicable statute, and, therefore, should be disallowed as deductions. However, for reasons already stated, we think that the Supreme Court’s decision in Lucas v. Ox Fibre Brush Co., supra, supports the deduction and is controlling. Petitioner is, therefore, sustained on this issue. Decision will be entered, u/nder Rule 50. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses.— (1) Trade ok business expenses.— (A) In General. — All'the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * * Sec. 29.23 (a)-l. Business Expenses. — -Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer’s trade or business, except the classes of items which are deductible under sections 23 (b) to 23 (z), inclusive, and the regulations thereunder.. * * * Among the items included in business expenses are management expenses, commissions (but see section 29.24-2), labor, * * *